IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| DARRYL BELL, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:08-CV-0072 |
| | § | |
| RICK THALER, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION
## TO DENY PETITION FOR A WRIT OF HABEAS CORPUS

Petitioner has filed with this Court a petition for a federal writ of habeas corpus challenging an April 2, 2007 prison disciplinary proceeding which took place at the Clements Unit in Potter County, Texas. For the following reasons, the undersigned United States Magistrate Judge recommends petitioner's habeas petition be DENIED.

Petitioner was convicted and sentenced to terms of imprisonment in four (4) separate causes. On July 24, 1991, petitioner was convicted for the April 9, 1991 offense of delivery of a controlled substance in Harris County, Texas and was sentenced to forty-five (45) years imprisonment. *State v. Bell*, Cause No. 594,353. Petitioner was subsequently convicted, also in Harris County, of the August 13, 1991 offenses of aggravated assault of a peace officer and aggravated assault. *State v. Bell*, Cause No. 607,025. On March 4, 1992 and March 6, 1992, respectively, petitioner was sentenced to thirty (30) years imprisonment on each count, such

sentences to be served consecutively to his 45-year sentence in Cause No. 594,353. On October 11, 1996, petitioner was convicted, in Coryell County, Texas, of the March 4, 1995 offense of retaliation and was sentenced to four (4) years imprisonment to be served consecutively to his 30-year sentences in Cause No. 607,025. *State v. Bell*, Cause No. 13,821.

By this habeas application, petitioner challenges a prison disciplinary proceeding for threatening "to inflict harm on (any black offender he is housed with)" and the loss of 30-days previously accrued good time. Federal habeas relief cannot be had "absent the allegation by a [petitioner] that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States." *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir 1995). Therefore, in order to challenge a prison disciplinary adjudication by way of a federal petition for a writ of habeas corpus, a petitioner must, at a minimum, be eligible for mandatory supervised release <u>and</u> have received a punishment sanction which included forfeiture of previously accrued good time credits.[1] *See Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000). Under Texas law, "an inmate serving consecutive sentences is not eligible for release to mandatory supervision on any but the last of his consecutive sentences." *Ex parte Ruthart*, 980 S.W.2d 469, 473 (Tex.Crim.App. 1998); *see also Ex parte Cowan*, 171 S.W.3d 890, 894 (Tex.Crim.App. 2005) (reaffirming that court's holding in *Ruthart*). Mandatory supervision is not available to inmates serving consecutive sentences until they begin serving their final consecutive sentence. *Ruthart*, 980 S.W.2d at 474. Consequently, mandatory supervision eligibility is calculated only for the final sentence in the series of sentences petitioner is serving.

---

[1] When an inmate is eligible for release to mandatory supervision, he has a liberty interest in good time credits earned because such credits provide the possibility of an earlier release from prison. *Madison v. Parker*, 104 F.3d 765, 768-69 (1997) (citing *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)). If an inmate is not eligible for mandatory supervision, no liberty interest arises because good time will not mandatorily cause his sentence to cease operating any sooner. *See id.*

*Ex parte Forward*, 258 S.W.3d 151, 153 (Tex.Crim.App. 2008) (citing *Ruthart*).[2]

Petitioner is currently serving the 45-year sentence for his 1991 delivery of a controlled substance offense. Petitioner's sentence for this offense was eligible for early release to mandatory supervision <u>until</u> March 4, 1992, when petitioner was sentenced to a consecutive sentence, to wit: the first 30-year sentence for aggravated assault. Therefore, even though petitioner's current holding offense is "facially eligible for mandatory supervision," as noted by respondent, petitioner is not eligible for mandatory supervision on that sentence. In fact, petitioner is ineligible until he begins serving his final, mandatory supervision-eligible sentence, to wit: the 4-year sentence for retaliation. When he begins serving that 4-year sentence, he will be eligible for mandatory supervision when the calendar time he has served plus any accrued good conduct time equals the 4-year sentence. As a result, the reinstatement, at this time, of petitioner's thirty days of good time credits forfeited as a result of the disciplinary proceeding challenged herein would count only toward his parole eligibility on the current 1991 delivery offense, a status petitioner achieved on April 24, 1995.[3] It appears petitioner has not stated a claim for which federal habeas relief can be granted.

That simple analysis, unfortunately, is not the end of the matter. Although beyond the issue of petitioner's current eligibility for mandatory supervision, the undersigned notes petitioner's first sentence, his 45-year sentence, will "cease to operate," for purposes of beginning his second sentence, the 30-year sentence, when a parole panel designates the date on which

---

[2] In this habeas case, unlike the petitioner in *Ruthart*, petitioner is not challenging the operation of his sentences. Petitioner here merely challenges the procedure and outcome of a prison disciplinary case. Therefore, this Court references the operation, or the cessation thereof, of petitioner's sentences only in addressing statements made in respondent's exhibits in response to the Court's Order to Show Cause.

[3] TDCJ is required to calculate parole eligibility separately for each sentence when a prisoner is sentenced to consecutive felony sentences.

petitioner would have been released on parole on his 45-year sentence if that were the only sentence petitioner was serving.[4] *Cf. Ex parte Kuester*, 21 S.W.2d 264, 270-71 (Tex.Crim.App. 2000). In his answer, respondent advises the Board of Pardons and Paroles has not yet designated the date upon which petitioner would have been released to parole on the 45-year sentence if that were the only sentence he was serving.[5] Therefore, petitioner's 45-year sentence has not ceased to operate in order for his 30-year concurrent sentences to begin. Further, this petitioner is subject to not one, but two consecutive 30-year sentences upon completion of his 45-year sentence. Those sentences, for aggravated assault and for aggravated assault of a peace officer, are ineligible for mandatory supervised release pursuant to statute[6] and also pursuant to case law because they are consecutive sentences.

The pleadings filed to date, however, leave an important question unanswered: although petitioner is not entitled to habeas relief at this time because he is not currently eligible for release to mandatory supervision, will the forfeiture of his good time credits become relevant at some future time? Namely, once petitioner's 45-year sentence for delivery of a controlled substance and 30-year sentences for aggravated assault have ceased to operate, either by serving them in full through calendar time or by a parole panel designating the date on which he would have been released to parole, what happens to the good time petitioner earned while serving these prior sentences? If the good time earned on these previous sentences carries over from one sentence to

---

[4]Of course petitioner's first sentence will also cease to operate when he has served the sentence in full through calendar time. Accumulating the amount of time necessary to qualify for release to mandatory supervision does not cause a sentence to cease to operate. *Ruthart*, 980 S.W.2d at 474.

[5]The Minutes page from the Clemency and Parole System provided by respondent does not reflect routine consideration for petitioner to be paroled on his 45-year sentence since acquiring eligibility in April 1995. Neither petitioner or respondent have provided the Court with authority setting forth time requirements for the Board to designate such a date.

[6]*See* Tex. Crim. Pro. Ann. Art. 42.18 § 8(c)(5) (Vernons 1991).

the next and, then, a question arises as to what happens when petitioner begins serving his last sentence, *i.e.*, his 4-year mandatory supervision-eligible retaliation sentence. If the good time carries over, it is possible the loss of thirty days good time could affect his release. On the other hand, if enough good time carries over, then petitioner could be released on this last sentence based on accrued good time alone. Although the Fifth Circuit has held any loss of good time qualifies a petitioner to due process protections,[7] the 30-day loss petitioner incurred as a result of the instant disciplinary proceeding could be rendered moot if he has accrued over four years of good time credits as of the time he begins serving his 4-year retaliation sentence. Likewise, if good time is carried over but petitioner has not accrued over four years of good time credits, it appears the 30-day loss would, in fact, delay petitioner's future release on his 4-year mandatory supervision-eligible retaliation sentence. Another possibility, however, is that if good time is not carried over from sentence to sentence, petitioner's current 30-day loss is of no consequence because good time calculations would begin anew with each sentence. None of these questions have been addressed. Because of these unaddressed issues of mootness, ripeness, possible limitations, and other unknown and unforeseeable consequences that may occur, the undersigned simply does not have sufficient facts to warrant recommending dismissal of this case based solely on petitioner's current ineligibility for mandatory supervised release.

## MERITS

On March 30, 2007, in disciplinary case no. 20070210671, petitioner was notified he was

---

[7] *Teague v. Quarterman*, 482 F.3d 769 (5th Cir. 2007) ("Texas inmates have long had protected liberty interests in any amount of previously-earned good-time credit, we hold today that none may be taken away by an administrative tribunal without affording the inmate due process, regardless of the absolute number of days forfeited or the percentage of the sentence (or the remaining balance thereof) represented by the number of days lost.").

being charged with the prison disciplinary offense of threatening to inflict harm on another offender (that he was going to "get any black offender he is housed with,"), a Level 2, Code 22.0 violation of the TDCJ-CID Disciplinary Rules and Procedures for Offenders. On April 2, 2007, the disciplinary hearing officer ("DHO") found petitioner guilty of the charge and assessed punishment, as relevant here, at 30-days loss of good time. Petitioner challenges this adjudication, disputing both the findings and the procedures of the disciplinary hearing and alleging his due process rights were violated.

On April 17, 2007 and again on April 24, 2007, petitioner submitted Step One grievances appealing the disciplinary proceeding. These grievances were both denied May 8, 2007. On May 15, 2007, petitioner submitted two Step Two grievances, appealing the outcome of the Step One grievances. Both were denied May 24, 2007. Petitioner placed the instant federal habeas petition in the prison mail system on February 6, 2008.

Petitioner appears to claim his due process rights were violated in the disciplinary proceeding because:

1. The disciplinary conviction was retaliatory because:

   a. it was used to cover up TDCJ-CID's officials putting petitioner at serious risk by housing him next to gang leaders and predators; and

   b. because he is an African-American, homosexual prisoner trying to exercise his freedom of speech and file grievances;

2. The conviction is not supported by sufficient evidence because the accusing officer never heard petitioner threaten anybody;

3. Petitioner was denied due process because the disciplinary hearing officer:

   a. failed to review the entire file or turn over exculpatory information

|      |                                                                                                                     |
|------|---------------------------------------------------------------------------------------------------------------------|
|      | to petitioner;                                                                                                      |
| b.   | was biased because she gave preferential treatment to theTDCJ-CID officials and refused live testimony from petitioner's witnesses; |
| c.   | improperly denied petitioner the right to present an I-60;                                                          |
| d.   | did not provide petitioner with a written statement for the reasons for conviction and evidence supporting guilt; and |
| e.   | was arbitrary in assessing punishment in that she did not base punishment on the individual case.                   |

Respondent contends petitioner has failed to exhaust his administrative remedies because he did not raise all of his allegations in both steps of the grievance procedure. Unexhausted claims, however, may be denied on the merits. Since, as analyzed below, petitioner's claims are without merit, it is not necessary to reach the question of whether petitioner sufficiently exhausted his administrative remedies. *See* 28 U.S.C.§ 2254(b)(2); *Mercadel v. Cain*, 179 F.3d 271, 276-78 (5th Cir. 1999).

By his third ground, petitioner alleges he was denied due process in the disciplinary hearing. Petitioner's disciplinary hearing, however, satisfied the due process standard set forth in *Wolff v. McDonnell*, 418 U.S. 539, 556-70 (1974). The record reflects petitioner received written notice of the disciplinary charges more than twenty-four hours before the hearing. Petitioner was informed of his right, and provided an opportunity, to call witnesses and present documentary evidence. Petitioner requested the testimony of the charging officer and such was admitted at the hearing through the offense report and over speaker phone. Although not requested by petitioner,

additional relevant testimony was properly presented by the correctional officer who was identified as a witness to the offense in the offense report.  Lastly, petitioner was permitted to attend the hearing and was provided a written statement by the DHO of the evidence presented and considered, as well as the reasons for the determination of guilt and the particular punishment imposed.  Although the hearing report shows petitioner was in handcuffs and could not sign the report indicating his receipt thereof, petitioner has not shown he did not, in fact, receive a copy of the report, nor has he shown any prejudice resulted from allegedly not receiving a copy.  Moreover, although not required under *Wolff*, petitioner was given the opportunity to make a statement and was provided counsel substitute.  Petitioner was provided all the due process required by *Wolff*.  Any further accusations of deficiencies on the part of the hearing officer made by petitioner are conclusory and not entitled to any evidentiary weight.  Moreover, petitioner has not demonstrated how any such alleged deficiencies amounted to a denial of due process.  Petitioner's ground is without merit.

By his first ground, petitioner alleges the disciplinary charges were brought against him in retaliation for previously filed grievances and to discriminate against petitioner because of his race and sexual orientation.  Petitioner does not provide any evidence to support his claim of retaliation, instead offering only self-serving characterizations and baseless assertions that the disciplinary charge occurred for these reasons.  Petitioner has not shown, in any way, that "but for" a retaliatory motive, he would not have been charged with this disciplinary offense, found guilty of the offense, or would have received a lesser punishment.  Petitioner's conclusory allegations in support of his retaliation claim are insufficient, as a matter of law, to raise a cognizable claim on federal habeas review.  *See id.; Perillo v. Johnson*, 79 F.3d 441, 444 (5th

Cir. 1996); *Smallwood v. Johnson*, 73 F.3d 1343, 1351(5th Cir. 1996).[8]

Petitioner also claims the prison staff failed to provide him with safekeeping against other offenders. Petitioner's allegations are not cognizable in a habeas action. Further, such claims are nothing more than conclusory assertions and are entitled to no evidentiary weight. *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983). Petitioner's claims are without merit.

By his second ground, petitioner contends the disciplinary ruling is not supported by sufficient evidence because Sgt. Johnston, the charging officer who wrote the offense report (and was the only witness requested by petitioner), was not present when petitioner made the alleged threat. While petitioner is correct that Sgt. Johnston, the accusing officer, was not present when the alleged threat was made, it is of no consequence. Another officer, Lt. Sanchez, was present. Lt. Sanchez reported the incident to Sgt. Johnston who filed the offense report alleging the disciplinary violation. Moreover, the record reflects there was sufficient evidence to support the DHO's finding of guilt. Lt. Sanchez, the correctional officer present during the incident in question, who reported the incident, and was named as a witness on the offense report, gave several consistent statements and, in fact, testified at the hearing by speaker phone. Lt. Sanchez testified that while he was interviewing petitioner concerning petitioner's request to file an Offender Protection Investigation (OPI), petitioner stated that if they housed him with another black offender, he was going to "get them." The offense report, the investigation worksheet, and counsel substitute's worksheet all support a finding that Lt. Sanchez witnessed the threat and reported the threat to Sgt. Johnson who wrote up the offense report. The DHO considered the

---

[8]To the extent, if any, that petitioner's first ground can be construed as raising a claim of denial of equal protection, the undersigned adopts respondent's discussion set forth on pages 20-22 of *Respondent's Answer* and finds such a claim would not be cognizable in a federal habeas corpus proceeding.

witnessing officer's statement and testimony, the charging officer's report and testimony, as well as petitioner's written statement alleging the witnessing officer made up the threat and instructed an offense report be filed to "cover up for not offering [petitioner] the chance to write an OPI," and assessed the weight given to each. Based on the evidence and the credibility determination afforded each statement, the DHO found petitioner guilty. The record clearly shows there was some evidence to support the disciplinary hearing officer's finding of guilt. This finding cannot be refuted by petitioner's conclusory allegations that the witnessing officer fabricated the alleged threat or that the charging officer's report was not sufficient evidence because he was not an eye witness to the purported threat. Petitioner's second ground is without merit.

## RECOMMENDATION

It is the RECOMMENDATION of the undersigned United States Magistrate Judge to the United States District Judge that the petition for a writ of habeas corpus filed by petitioner DARRYL BELL be DENIED.

## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this ___23rd___ day of May 2011.

*[signature]*
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

# * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).